# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CHANEL SHERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: |
| ) | JURY TRIAL DEMANDED |
| THE TOWN OF MERRILLVILLE, ) | |
| OFFICER JESUS SOLIS, in his individual ) | |
| Capacity, OFFICER R. SMITH, in his individual) | |
| capacity, OFFICER GERMONPREZ, in his ) | |
| individual capacity, OFFICER OLSON, in his ) | |
| individually capacity, OFFICER FIELDS, in his ) | |
| individual capacity, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Comes now, Plaintiff, CHANEL SHERMAN, by counsel, **MIDWEST INJURY LAWYERS, LLC**, and for his Complaint against Defendants, THE TOWN OF MERRILLVILLE, OFFICER JESUS SOLIS, in his individual capacity, OFFICER R. SMITH, in his individual capacity, OFFICER GERMONPREZ, in his individual capacity, OFFICER OLSON, in his individual capacity, and OFFICER FIELDS, in his individual capacity, respectfully states as follows:

### I.     INTRODUCTION

1.   This case involves violent and unconstitutional abuse of police power by members of the Merrillville Police Department (hereinafter, "MPD"), including Defendants, Officer Jesus Solis (hereinafter, "Solis"), Officer R. Smith (hereinafter, "Smith"), Officer Germonprez (hereinafter, "Germonprez"), Officer Olson (hereinafter,

"Olson"), and Officer Fields (hereinafter, "Fields") (hereinafter and collectively, "Police Officer Defendants").

2. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights secured by the United States Constitution.

## II.   JURISDICTION AND VENUE

3. This Court has jurisdiction of action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff is asserting claims under 42 U.S.C. §1983, Fourth and Fourteen Amendments to the United States Constitution, and a supplemental state law claim for indemnification.

4. Venue is proper under 28 U.S.C. §1391 as the events giving rise to the claims asserted herein occurred within the Northern District of Indiana-Hammond Division.

## III.   THE PARTIES

5. Plaintiff, Chanel Sherman (hereinafter, "Plaintiff") is an African American male and resided at 120 E. 54th Avenue, Apt. 101 in Merrillville, Indiana at the time of the subject incident.

6. At all relevant times, Defendant, The Town of Merrillville (hereinafter, "The Town") was an Indiana town that was incorporated and organized under Indiana state law and operated, funded, and otherwise supervised the MPD.

7. At all relevant times herein, Solis was an MPD officer assigned to the patrol division.

8. At all relevant times herein, Smith was an MPD officer assigned to the patrol division.

9. At all relevant times herein, Germonprez was an MPD officer assigned to the patrol division.

10. At all relevant times herein, Olson was an MPD officer assigned to the patrol division.

11. At all relevant times herein, Fields was an MPD officer assigned to the patrol division.

12. At all relevant times herein, the Police Officer Defendants were operating within the course and scope of their employment with the Town as police officers and under the color of law.

## IV.   FACTUAL BACKGROUND

*A. The Incident*

13. On or about March 13, 2023, at approximately 3:30 a.m., Plaintiff came home to his residence located at 120 E. 54th Avenue, Apt. 101 in Merrillville, Indiana. (hereinafter, "residence").

14. Once Plaintiff arrived at the residence, a verbal argument between him and his wife, Shaquanna Nelson, (hereinafter, "Shaquanna") ensued.

15. During the argument, Shaquanna voluntarily locked herself in a bedroom with one of her and the Plaintiff's children.

16. After locking herself in the bedroom, Shaquanna Facetimed her mother and decided that she and her children were going to leave the residence and go to her mother's house. At this point, Shaquanna started packing her bags.

17. Ultimately, Shaquanna's mother called 911 and the Police Officer Defendants were dispatched to the residence.

18. The Police Officer Defendants responded to the call and arrived at the residence.

19. Once Police Officer Defendants arrived at the front door of the residence, they identified themselves and said they needed to talk to Plaintiff's wife.

20. The Police Officer Defendants could not make any visual observations inside of the residence as the front door was shut.

21. At this time the Police Officer Defendants initially arrived at Plaintiff's front door and announced themselves, Plaintiff responded, "Okay she's gonna come out." Plaintiff also told Shaquanna to go out of the residence's patio door to talk to police as he did not want the Police Officer Defendants to enter the home without a warrant and with guns drawn.

22. At that point, Plaintiff moved a couch in front of the residence's door to prevent the Police Officer Defendants from making an illegal entry into his residence. This move was not to confine or prevent Shaquanna's movement in any way, as the residence had an alternative exit: a patio door that Plaintiff previously directed Shaquanna to use to exit the residence and talk with police.

23. A verbal argument between the Police Officer Defendants and Plaintiff continued when Plaintiff told the Police Officer Defendants that they were not permitted to enter his residence and Shaquanna was leaving. Plaintiff specifically stated, "She's finna come out and talk to y'all, bruh."

24. Shaquanna approached the front door to get ready to leave the apartment and Plaintiff told her that "Okay, you go, they are not coming into my house."

25. There was no indication at any period of time that Plaintiff was holding Shaquanna against her will or that Plaintiff was using or may use physical force in any way on Shaqunna.

26. Plaintiff did not have any weapon in his possession.

27. Plaintiff did not make any threats against Shaquanna while the Police Officer Defendants were present nor did Shaquanna or any other witness report any threats made by Plaintiff prior to the Police Officer Defendants' arrival at the residence.

28. Without any justification, *i.e.*, a warrant or any facts supporting an exception to the Fourth Amendment's warrant requirement, the Police Officer Defendants threatened to kick in the residence's door.

29. Ultimately, the Police Officer Defendants kicked the door of the residence down when Plaintiff continued to refuse to allow them to make an illegal entry into his residence.

30. Once the residence's front door was kicked down, Plaintiff was in a position of surrender with his hands raised and was not physically resisting in any way when the Police Officer Defendants grabbed his arms and violently slammed him onto the floor while quickly handcuffing him. During this process, one of the Police Officer Defendants held Plaintiff down onto the floor by placing his knee and entire body weight onto Plaintiff's body despite the fact that he was not physically resisting.

31.     Despite Plaintiff's clear lack of physical resistance when the Police Officer Defendants entered the apartment, Solis walked Plaintiff out to the squad car and told him he was being arrested for resisting arrest, even though he had no probable cause to arrest Plaintiff for any crime.

32.     While escorting Plaintiff to a squad car, Officer Solis stated to Plaintiff, "Dumbass. Dumbass Illinois attitude you got."

33.     Plaintiff asked another MPD officer what his going to jail for, the MPD officer can be heard responding, "for being a fucking idiot."

34.     While being placed in the squad car, The Police Officer Defendants also told Plaintiff that he has a "fucking shitty attitude" and he is "super fucking shitty."

35.     Despite not having any probable cause to arrest Plaintiff, the Police Officer Defendants then conducted an illegal search of Plaintiff's person prior to placing him in the squad car.

### B. *Police Officer Defendants conference to determine what false and baseless charge to lodge against Plaintiff to justify his arrest and interview with Shaquanna*

36.     After Plaintiff was placed in an MPD squad car, the Police Officer Defendants conferred to determine which false charges to bring against Plaintiff.

37.     The Police Officers Defendants discussed criminal confinement (Ind. Code §34-42-3-3) as a possible charge, but clearly knew that it was a not a charge supported by any probable cause as one of the Police Officer Defendants stated the criminal confinement charge was "borderline."

6

38. With actual knowledge that the charge of criminal confinement was baseless, the Police Officer Defendants decided to call a supervisor, Commander Matthew Vasel, to approve the charge.

39. Commander Vasel then directed the Police Officer Defendants to interview Shaquanna to see if she could provide any statements that would provide probable cause for a criminal confinement charge.

40. The Police Officer Defendants then returned to Shaquanna and attempted to obtain statements supportive of the criminal confinement charge as Commander Vasel was "eager" for a criminal confinement charge against Plaintiff.

41. If a criminal confinement charge was "borderline" prior to talking with Shaquanna, it was clearly unsupported after the Police Officer Defendants obtained Shaquanna's statement. Shaqunna made the following statements to the Police Officer Defendants:

   a. Plaintiff had no weapon and that he did not touch or threaten her.

   b. Plaintiff told her to "just go" and "you can leave, you can leave. Just get my kids dressed."

   c. Plaintiff was going to open the door for her and just wanted her to have the kids dressed first.

   d. Plaintiff placed the couch in front of the door to prevent the Police Officer Defendants from entering the residence, not to prevent her from leaving the residence.

42. Despite Shaquanna's statements, which clearly did not provide probable cause for arresting Plaintiff for criminal confinement, the Police Officer Defendants falsely arrested Plaintiff for criminal confinement and resisting arrest.

### C. S*olis submits a false probable cause affidavit in support of the baseless charges against Plaintiff*

43. On March 13, 2023, Officer Solis submitted a probable cause affidavit for charges of criminal confinement and resisting law enforcement against Plaintiff.

44. In the affidavit, Solis falsely indicated that Plaintiff resisted arrest, stating, "Officers then attempted to detain [Plaintiff] but he began to tense up his body and continued to be uncooperative." Apart from the fact that the Police Officer Defendants had no legal basis to seize the Plaintiff to begin with, this statement is completely false. Solis' body camara clearly captures Plaintiff surrendering with his hands up upon the Police Officers Defendants' illegal entry into the residence.

45. The footage further shows that Plaintiff was quickly handcuffed by three of the Police Officer Defendants without any physical resistance.

46. Next, Solis states that Shaquanna told him that Plaintiff "was not letting her open the door in order to leave or speak with officers." This statement is false on a number of levels. First, Officer Solis was present and his body camera captured audio where Plaintiff was instructing Shaquanna to leave outside of the residence's patio door. The body camara also captured Plaintiff stating on a number of occasions that Shaquanna could leave the residence. Lastly, Shaquanna specifically told Solis and the other Police Officer Defendants that Plaintiff told her to leave the apartment and that he was going to open the door for her to leave.

47. Solis deliberately omitted the statements made by Shaquanna, statements that he personally heard, and observations that he personally made which negated probable cause for both criminal confinement and resisting law enforcement charges.

48. On March 21, 2023, Shaquanna executed an affidavit that reaffirmed that Solis' affidavit contained false information and omitted several key facts that negated proximate cause for all the charges brought against Plaintiff.

49. Despite having knowledge of the falsity of his probable cause affidavit and Shaquanna's statements, Solis did not attempt at any point to correct or withdraw the affidavit. Additionally, Solis did not make any request to the Lake County Prosecutor's Office (hereinafter, "LCPO") to withdraw the charges against Plaintiff due to the false and misleading information contained in his affidavit.

50. The other Police Officer Defendants also knew that the arrest of Plaintiff lacked probable cause based on their personal observations and statements made by Shaquanna. Despite having knowledge that the charges lacked probable cause, the other Police Officer Defendants did not intervene to stop the seizure, search, use of force, or arrest of Plaintiff, and did not intervene to stop the submission of Solis' probable cause affidavit that contained false and misleading statements.

### D. *Plaintiff charged with criminal confinement and resisting arrest and detained at the Lake County Jail*

51. On March 13, 2023, the State of Indiana charged Plaintiff with criminal confinement (Ind. Code 35-42-3-3 (a), Level 6 Felony) and resisting law enforcement (Ind.

9

Code 35-44.1-3-1, Class A Misdemeanor) based on the false affidavit tendered by Solis. (*See* Lake County, IN Case No. 45G03-2303-F6-000470).

52. After his arrest, Plaintiff was detained at the Lake County Jail.

53. On March 14, 2023, the Lake County Probation Department requested a warrant for Plaintiff's arrest in two unrelated pending criminal matters due to him allegedly violating the rules of his pretrial release by being arrested for the subject criminal confinement and resisting law enforcement charges.

54. As a direct and proximate result of the false charges lodged against Plaintiff by the Police Officer Defendants, Plaintiff remained in custody at the Lake County Jail for eighty-eight (88) days.

### E. *The State drops the charges after obtaining the Police Officer Defendants' body camara footage*

55. During discovery, the LCPO obtained the Police Officer Defendants' body camara recordings.

56. After reviewing the recordings, the State determined that the subject charges, i.e., criminal confinement and resisting law enforcement, lacked probable cause and that Solis submitted a false and misleading affidavit.

57. On June 6, 2023, the State voluntarily dismissed the subject charges against Plaintiff with prejudice.

## V.  CAUSES OF ACTION

### COUNT I-42 U.S.C. § 1983
### UNREASONABLE SEARCH AND SEIZURE
### (Fourth and Fourteenth Amendments)

58.  Each paragraph of the Complaint is incorporated herein.

59.  The Police Officer Defendants seized and searched Plaintiff for no purpose and with no lawful justification.

60.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's rights.

61.  The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

62.  As a result of this misconduct, Plaintiff suffered was unlawfully detained for eighty-eight days at the Lake County Jail, suffered, and continues to suffer, physical and emotional injuries, loss of income and other damages.

### COUNT II-42 U.S.C. § 1983
### FALSE ARREST
### (Fourth and Fourteenth Amendments)

63.  Each Paragraph of this Complaint is incorporated herein.

64.  As described more fully above, the Police Officer Defendants falsely arrested and unlawfully detained Plaintiff without justification and without probable cause.

65.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's rights.

66. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

67. As a result of this misconduct, Plaintiff suffered was unlawfully detained for eighty-eight (88) days at the Lake County Jail, suffered, and continues to suffer, physical and emotional injuries, loss of income and other damages.

## COUNT III-42 U.S.C. § 1983
## DUE PROCESS/FABRICATION OF EVIDENCE
### (Fourteenth Amendment)

68. Each paragraph of this Complaint is incorporated herein.

69. The Police Officer Defendants fabricated the probable cause affidavit by deliberately omitting statements made by Shaquanna that negated probable cause as well as facts they personally observed and statements they personally heard that negated probable cause, and failed to correct fabricated evidence that they knew to be false when they submitted the affidavit in support of the charges against Plaintiff.

70. The Police Officer Defendants' falsification of evidence resulted in Plaintiff's loss of liberty without due process of the law.

71. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's rights.

72. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

73. As a result of this misconduct, Plaintiff suffered was unlawfully detained for eighty-eight (88) days at the Lake County Jail, suffered, and continues to suffer, physical and emotional injuries, loss of income and other damages.

## COUNT IV-42 U.S.C. § 1983
## USE OF EXCESSIVE FORCE
**(Fourteenth Amendment)**

74. Each Paragraph of this Complaint is incorporated herein.

75. At all relevant times, the Police Officer Defendants had no probable cause of seize Plaintiff, and thus had no justification to use any force on Plaintiff.

76. As described above, the Police Officer Defendants' conduct constituted excessive and unreasonable force in violation of the United States Constitution.

77. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's rights.

78. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

79. As a result of this misconduct, Plaintiff suffered was suffered, and continues to suffer, physical and emotional injuries and other damages.

## COUNT V — 42 U.S.C. § 1983
## FAILURE TO INTERVENE

63. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

64. In the manner described above and during the constitutional violations described herein, one or more of the Police Officer Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

65. As a result of the Police Officer Defendants' failure to intervene to prevent violations of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Police Officer Defendants had ample, reasonable opportunities to prevent this harm but failed to do so.

66. The misconduct described in this Count was objectively unreasonable, undertaken intentionally and in total disregard of the truth and Plaintiff's clear innocence.

67. As a result of the misconduct of the Defendants described in this Count, Plaintiff suffered loss of liberty, loss of earning capacity, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VI—42 U.S.C. § 1983
## CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

68. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

69. The Police Officer Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to falsely arrest and charge Plaintiff without probable cause.

70. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

71. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

72. The misconduct described in this Count was objectively unreasonable, undertaken intentionally and in total disregard of the truth and Plaintiff's clear innocence.

73. As a result of the misconduct of the Police Officer Defendants described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### COUNT VII-SUPPLEMENTAL STATE LAW CLAIM
### IDEMNIFICATION

80. Each Paragraph of this Complaint is incorporated herein.

81. In Indiana, public entities are directed to pay judgments of civil rights violations to which present or former public employees are liability, including such civil rights violations as described in this Complaint. Ind. Code § 34-13-4-1.

82. At all relevant times, the Police Officer Defendants were employees/servants/agents of the Town at the time of the acts alleged in this Complaint, and acted willfully, wantonly and within the scope of their employment in committing the acts and omissions described herein.

WHEREFORE, Plaintiff, CHANEL SHERMAN respectfully requests that the Court enter judgment in his favor on all counts of his Complaint and against Defendants, THE TOWN OF MERRILLVILLE, OFFICER JESUS SOLIS, in his individual capacity,

OFFICER R. SMITH, in his individual capacity, OFFICER GERMONPREZ, in his individual capacity, OFFICER OLSON, in his individual capacity, and OFFICER FIELDS, awarding compensatory damages, attorneys' fees and costs as well as punitive damages against Defendant, OFFICER JESUS SOLIS, in his individual capacity, OFFICER R. SMITH, in his individual capacity, OFFICER GERMONPREZ, in his individual capacity, OFFICER OLSON, in his individual capacity, and OFFICER FIELDS, and for all further relief that is just and proper in the premises.

## JURY DEMAND

Plaintiff demands trial by jury on all triable counts of his Complaint.

    Respectfully submitted,

By: _____

Chester L. Cameron, Jr.
Brennan B. Hutson (*To be admitted in NDIN*)
**MIDWEST INJURY LAWYERS, LLC**
155 N. Wacker Drive, Ste. 4250
Chicago, IL 60606
T: (312) 786-5881
F: (773) 595-4716
e-mail: ccameron@midwestinjurylawyers.com
Attorney for Plaintiff